Steven C. Bailey (SBN 146382)
[Designated Counsel for Service]
Martha E. Romero (SBN 128144)
**BAILEY & ROMERO**
2535 Kettner Blvd., Suite 2A1
San Diego CA 92101
(619) 323-1389
steven@baileyandromero.com

Attorneys for Plaintiffs Tuck's Restaurant and Bar,
Kenneth R. Paige, Chad Page, Buckman Enterprises, LLC,
Robin Buckman, and The Nevada County Restaurant
Coalition

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT CALIFORNIA

TUCK'S RESTAURANT AND
BAR, a California corporation,
KENNETH R. PAIGE; CHAD
PAIGE; BUCKMAN
ENTERPRISES, LLC, a California
limited liability company; ROBIN
BUCKMAN; and THE NEVADA
COUNTY RESTAURANT
COALITION, an unincorporated
membership association;

     *plaintiffs*,

v.

GAVIN NEWSOM, in his capacity
as Governor of the State of
California; XAVIER BACCERA,
in his capacity as Attorney General
of the State of California; MARK
GHALY, in his capacity as
Secretary of the California Health
and Human Services Agency;
SANDRA SHEWRY, in her
capacity as Acting Director of the
California Department of Public
Health; ERICA PAN, in her
capacity as Acting State Public
Health Officer for the California

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

    **SUBSTANTIVE DUE PROCESS
(14th Amendment)**

    **PROCEDURAL DUE PROCESS
(14th Amendment)**

    **EQUAL PROTECTION
(14th Amendment)**

    **UNCOMPENSATED TAKINGS
(5th Amendment)**

    **COMMERCE CLAUSE
(Art. 1, Section 8)**

    **FREEDOM OF SPEECH,
ASSEMBLY AND PETITION
(First Amendment)**

Department of Public Health;
HEIDI HALL, in her capacity as a
Member of the Board of
Supervisors of Nevada County,
California; ED SCOFIELD, in his
capacity as a Member of the Board
of Supervisors of Nevada County,
California; DAN MILLER, in his
capacity as a Member of the Board
of Supervisors of Nevada County,
California; SUSAN HOEK, in her
capacity as a Member of the Board
of Supervisors of Nevada County,
California; RICHARD
ANDERSON, in his capacity as a
Member of the Board of
Supervisors of Nevada County,
California; RICHARD O.
JOHNSON, in his capacity as
Public Health officer for Nevada
County, California; AMY IRANI,
KATHARINE  ELLIOTT; and
DOES 1-10 inclusive,

    *defendants.*

## JURISDICTION

1.    This action asserts claims pursuant to 42 U.S.C. § 1983. The court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1337. Declaratory relief is authorized on the facts alleged pursuant to 28 U.S.C. § 2201. Injunctive relief is authorized pursuant to 28 U.S.C. § 1343(a).

2.    Venue of this civil action in the Judicial District for the Eastern District of California is proper pursuant to 28 U.S.C. § 1391 (b) (1) and (2). Defendants maintain offices, exercise their authority in their official capacities, and have taken the actions at issue in this matter in the Judicial District for the Eastern District of California.

///

///

1

## NATURE OF THE ACTION

2      3.      Plaintiffs bring this action to seek relief from ongoing arbitrary restrictions

3 imposed and enforced by defendants which violate the fundamental liberties of plaintiffs and

4 the citizens of the State of California and the United States and threaten them with irreparable

5 harm.

6      4.      On March 19, 2020, in response to the spread of the novel coronavirus and

7 COVID-19, defendant Gavin Newsom, in his official capacity as Governor of the State of

8 California, imposed emergency Orders pursuant to the authority granted him by California

9 law. The emergency Orders issued by Governor Newsom and the restrictions implemented

10 pursuant to such Orders are unprecedented in their scope and duration. Plaintiffs have, in

11 addition, been subjected to Orders and enforcement measures implemented under color of state

12 law by Nevada County, California.

13      5.      The Orders  and restrictions implemented  and enforced by defendants in

14 response to COVID-19 have imposed widespread population lockdowns, broadly-based and

15 open-ended business closures and restrictions, and pervasive and ongoing restrictions on the

16 right of the people to travel, associate, and assemble to pursue otherwise lawful spiritual,

17 political, economic and social ends. These restrictions are unprecedented in the history of

18 public health measures.

19      6.      While arguably justified in their inception as temporary measures imposed in

20 the face of limited information, evidence and analysis available since at least May 2020

21 establish that the Orders and restrictions at issue in this matter cannot be justified as narrowly

22 tailored to protect public health and have, in fact, resulted in other significant, negative health

23 outcomes, including lower childhood vaccination rates, worsening cardiovascular disease

24 outcomes, fewer cancer screenings and deteriorating mental health, leading to greater excess

25 mortality in years to come. Given the availability of alternative measures that rationally

26 address all legitimate public health concerns by targeting at risk populations, continued

27 enforcement of the Orders and restrictions at issue in this matter would be arbitrary and

28 capricious and would violate the fundamental rights of plaintiffs and the people of the State of

California under the Fourteenth Amendment to travel, associate, pursue lawful professions, engage in lawful business enterprises, and seek gainful employment.

7.     The Orders and restrictions at issue in this matter were implemented solely through executive action and without affording plaintiffs and the people of State of California notice and an opportunity to be heard in violation of their right to procedural due process under the Fourteenth Amendment to the United States Constitution.

8.     The Orders and restrictions at issue in this matter are based on arbitrary and irrational classifications in violation of the right to equal protection guaranteed by the Fourteenth Amendment. The Orders and restrictions are based on arbitrary classifications of activities as "essential or "non-essential" that are not rationally related to promoting public health, promote the interests of favored groups without reference to the impact of the activities in question on the transmission of COVID-19, and shift the burden of the response to COVID-19 to a limited class of persons and businesses.

9.     The Orders and restrictions at issue in this matter have interfered with distinct investment-based expectations in private property without compensation and have thereby effected uncompensated takings in violation of the Fifth Amendment to the United States Constitution.

10.     The Orders and restrictions at issue in this matter unreasonably burden interstate commerce in violation of Article I, Section 8, Clause 3 of the Constitution.

11.     Plaintiffs have been seriously harmed by the Orders and restrictions at issue in this matter and are and are threatened with irreparable harm if the Orders and restrictions at issue are not enjoined.

12.     Plaintiffs Tuck's Restaurant and Bar dba Friar Tuck's Restaurant and Bar ("Friar Tuck's") and Buchman Enterprises, LLC dba Old Town Café ("Old Town Café") are restaurants located in Nevada County serving the general public. Plaintiff Nevada County Restaurant Coalition (the "Coalition") is a membership association of dining and drinking establishments in Nevada County, California.

13.     Plaintiffs have been damaged by the arbitrary and ever-changing Orders and restrictions at issue. The Orders at issue in this matter initially prohibited plaintiffs from providing indoor dining service. This restriction threatened to bankrupt plaintiffs. The restriction on indoor dining was then lifted, but was soon reimposed, once again threatening plaintiffs' ability to stay in business and depriving plaintiffs of the benefit of their investment in measures implemented to prevent the spread of COVID-19 upon reopening. Although plaintiffs' businesses are continuing to operate on a limited basis, they will be unable to continue as viable going concerns when the onset of fall and winter weather curtails outdoor dining which under the restrictions currently in place, has allowed them to remain in business. Moreover, under the legal authority under which they purport to act, defendants are able to reinstate any previously imposed Orders and restrictions if preliminary and permanent injunctive relief is not granted.

14.     Plaintiffs have also been subjected to arbitrary, irrational, and discriminatory enforcement by Nevada County, California in violation of their right to equal protection under the Fourteenth Amendment. Nevada County intentionally, irrationally and arbitrarily issued closure orders as to certain plaintiffs while overlooking violations by similarly situated businesses.

15.     Nevada County has also violated plaintiffs' First Amendment rights. Following the arbitrary closure orders imposed by Nevada County, the other plaintiffs organized the Coalition, sought redress from the closure orders from Nevada County, and sought to mobilize public opposition to the Orders and restrictions at issue in this matter. Nevada County retaliated against plaintiffs' protected, expressive activity by requiring plaintiffs to cease all such activity as a condition to reducing the fines imposed in connection with the arbitrary closure orders. This was nothing less than an attempt to directly silence plaintiffs' legitimate expressive activities in opposition to the Orders and restrictions at issue.

16.     Defendants' violations of plaintiffs' fundamental rights have inflicted substantial financial losses upon plaintiffs, unreasonably infringed upon plaintiffs' liberty

interests, resulted in uncompensated takings, and will result in irreparable harm to plaintiffs if enforcement of the Orders and restrictions at issue in this matter is not enjoined.

**PARTIES**

17.     Plaintiff Tuck's Restaurant and Bar ("Friar Tuck's") is a for-profit California corporation operating under the name Friar Tuck's Restaurant and Bar, which is and was at all relevant times engaged in providing dining and bar service to customers from a storefront location in Nevada City, Nevada County, California.

18.     Plaintiffs Kenneth Paige and Chad Paige are the sole shareholders of Friar Tuck's.

19.     Plaintiff Buckman Enterprises, LLC ("Old Town Café") is a California limited liability company operating under the name Old Town Café, which is and was at all relevant times engaged in providing dining and bar service to customers from a storefront location in Grass Valley, Nevada County, California.

20.     Plaintiff Robin Buckman is the sole member of Buckman Enterprises, LLC.

21.     Plaintiff Nevada County Restaurant Coalition (the "Coalition") is a membership association of businesses providing dining and drinking establishments in Nevada County, California. The Coalition is named as a representative of the interests of its members.

22.     Defendant Gavin Newsom is the Governor of the State of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom is named in his official capacity.

23.     Defendant Xavier Becerra is the Attorney General of California. Attorney General Becerra is named in his official capacity.

24.     Defendant Mark Ghaly is the Secretary of the California Health and Human Services Director Agency. The Secretary of the California Health and Human Services Agency is responsible for overall management and control of the Health and Human Services Agency. Cal. Govt. Code § 12800 (b). Secretary Ghaly is named in his official capacity.

25.     Defendant Sandra Shewry is the acting Director of the California Department of Public Health. The California Department of Public Health is a subdivision of the California Health and Human Services Agency. The California Department of Public Health is responsible for the enforcement of California health and safety laws and regulations.  Director Shewry is named in her official Capacity.

26.     Defendant Erica Pan is the acting State Public Health Officer for the California Department of Public Health. Defendant Pan is named in her official capacity.

27.     The term "State Defendants" as used hereinafter shall refer collectively to defendants Gavin Newsom, Xavier Bacerra, Mark Ghaly, Sandra Shewry and Erica Pan.

28.     Defendants Heidi Hall, Ed Scofield, Dan Miller, Susan Hoek and Richard Anderson are members of the Board of Supervisors for Nevada County, California ("Board of Supervisors"). The Board of Supervisors is the legislative and executive authority for county government for Nevada County, California ("Nevada County").[1] As such, the Board of Supervisors is the highest policy-making authority for Nevada County. Defendants Heidi Hall, Ed Scofield, Dan Miller, Susan Hoek and Richard Anderson are named in their official capacities.

29.     The term "Supervisor Defendants" as used hereinafter shall refer collectively to defendants Heidi Hall, Ed Scofield, Dan Miller, Susan Hoek and Richard Anderson.

30.     Defendant Richard O. Johnson is the Public Health Officer for Nevada County. Dr. Johnson is named in his official capacity

31.     Defendant Amy Irani is the Director of Environmental Health for Nevada County. Defendant Irani is named in her official and personal capacities.

32.     Defendant Katharine Elliott is County Counsel for Nevada County. Defendant Elliot is legal counsel for the Supervisor Defendants and Nevada County. Defendant Elliott is named in her personal and official capacities.

---

[1] https://www.mynevadacounty.com/1038/About-the-Board-of-Supervisors#:~:text=The%20Board%20of%20Supervisors%20is%20the%20legislative%20and,seeing%20that%20all%20Federal%20and%20State%20mandated%20 (November 10, 2020).

33.     The term "County Defendants" as used hereinafter shall refer collectively to the Supervisor Defendants, Richard O. Johnson, Amy Irani and Katharine Elliot.

**THE INITIAL STATE HEALTH ORDERS IN RESPONSE TO CORNAVIRUS**

34.     On or about March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency in response to the spread of COVID-19. Governor Newsom's emergency proclamation was issued pursuant to Section 8625 of the California Government Code.

35.     On March 19, 2020, Governor Newsom, invoking the authority granted him under sections 8567, 8627 and 8655 of the California Government Code, issued Executive Order N-33-20, directing all residents to "immediately heed" the State Public Health Officer's directives. The Order further directed all Californians to stay home "except as needed to maintain continuity of operations of the federal critical infrastructure sectors." The Order was issued "to protect the public health", "mitigate the impact of COVID-19", "bend the curve, and disrupt the spread of the virus."

36.     On or about March 19, 2020, Sonia Angell, who was then serving as the California State Public Health Officer, acting pursuant to the authority conferred by Governor Newsom's Orders, issued an Order which designated a list of "Essential Critical Infrastructure Workers."  The Order incorporated by reference the U.S. Government's 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. The Order provided that "Californians working in these 16 critical infrastructure sectors [would] continue their work because of the importance of these sectors to Californians' health and well-being." All other businesses and organizations were ordered either to cease all operations or to operate under substantial restrictions. Persons not employed in the 16 critical infrastructure areas were required to stay home except as necessary to obtain necessities such food, prescriptions, and healthcare.

**THE PLAINTIFF RESTAURANTS ARE REQUIRED TO CEASE INDOOR SERVICE**

37.     Plaintiffs Friar Tuck's, Old Town Café and Coalition members were required to

cease providing indoor dining for their customers to comply with the March 19, 2020 Order of the State Public Health Officer. Plaintiffs were permitted to offer exclusively take-out and delivery service. A prohibition on providing indoor service to customers would bankrupt Friar Tuck's, Old Town Café and Coalition members within a few months.

38.     Friar Tuck's had previously offered both sit down dining and food service in a bar area. Friar Tuck's has been in business since 1973. Friar Tuck's is located in the historic downtown district of Nevada City, a small city in a rural area in the heart of the Gold Country. Friar Tuck's is, and has for decades, been a mainstay of the local community.

39.     Prior to the implementation of the March 19, 2020 Orders, Old Town Café offered both sit down dining and food service in a bar or counter area. Old Town Café is the oldest continuously operating restaurant in Grass Valley, tracing its history back to the 1930's. Old Town Café specializes in serving breakfast and lunch. Old Town Café also offered dinner two nights a week. Old Town Café had also hosted the Talk of the Town show every month, which is a local radio program discussing local politics, businesses, and news. Furthermore, Old Town Café has for many years been offering free meals during Thanksgiving to 250 to 500 persons, including many homeless persons. This benefit to the community is now in jeopardy.

40.     Friar Tuck's and Old Town Café are both long-standing fixtures of the historic districts in Nevada County, and in addition to operating as restaurants, provided venues for numerous public and private events over the years.

41.     As a result of the restrictions prohibiting indoor service, plaintiffs Friar Tuck's and Old Town Café were forced to cancel numerous previously scheduled reservations and events.

42.     As a further result of the restrictions prohibiting indoor service, Friar Tuck's was required lay off 27 of its 32 employees to remain a solvent going concern.

43.     Old Town Café was likewise required to lay off employees to remain solvent during the period in which it was required to cease indoor service by reason of the March 19, 2020 Orders imposed and enforced by defendants.

44.     Notwithstanding their best efforts to mitigate the effect of the prohibition on indoor dining, plaintiff Friar Tuck's, Old Town Café and Coalition members suffered substantial reductions in revenue during the period between March 15 and May 4, 2020.

**PLAINTIFF RESTAURANTS WERE PERMITTED TO RESUME INDOOR SERVICE AND THEN REQUIRED TO CEASE INDOOR SERVICE AGAIN**

45.     On May 4, 2020, Governor Newsom, again acting pursuant to emergency powers under state law, issued Executive Order N-60-20.  This Order permitted businesses to begin reopening in stages, as determined by the State Public Health Officer. It also directed the State Public Health Officer to develop criteria to determine "whether and how … local health officers may  … issue directives less restrictive than measures … implemented on a statewide basis pursuant to the statewide directives of the State Public Health Officer."

46.     On May 7, 2020, State Public Health Officer Angell issued an Order permitting the gradual reopening of businesses and activities in California in stages. The Order provided for four stages of gradual reopening, with the final stage, Stage 4, consisting of an end to all stay-at-home orders and a full reopening of businesses.

47.      Under the May 7, 2020 Order, Friar Tuck's, Old Town Café and Coalition members were permitted to resume providing indoor dining service.

48.     In or about May 2020, plaintiffs Friar Tuck's, Old Town Café and Coalition members resumed indoor dining service.

49.     Friar Tuck's, Old Town Café and Coalition members were required by defendants to implement numerous additional health and safety practices as a condition to resuming indoor dining service under the May 7, 2020 Order. Compliance with these requirements imposed significant costs on Friar Tuck's, Old Town Café and Coalition members.

50.     On July 13, 2020, the State Public Health Officer issued a further Order directing all restaurants in the State of California to again cease indoor dining service. The Order applied to all restaurants in Nevada County, despite, on information belief, the fact that Nevada County—with a population of approximately 100,000—had thus far experienced no

shortage of hospital beds or ICU units and had experienced only one death attributed to COVID-19.

51.     The July 13, 2020 Order, by reinstating the prohibition on indoor dining service, substantially diminished plaintiffs' revenues and profits and again threatened their viability as ongoing business concerns. As a result of the July 13, 2020 Order, Friar Tuck's, Old Town Café and Coalition members were also unable to recoup the cost of implementing the safety measures imposed by the May 7, 2020 Order as a condition to offering indoor dining to their customers.

**NEW AND MORE RESTRICTIVE REQUIREMENTS ARE IMPOSED**

52.     On August 28, 2020, defendant Pan implemented a statewide Order that abandoned the previous, staged re-opening plan promulgated in the May 7, 2020 Order. The August 28, 2020 Order remains in effect at the time of the filing of the Complaint with a September 30, 2020 modification to include an "equity" component.

53.     The August 28, 2020 Order dictated that counties would be classified according to a new plan entitled "Blueprint for a Safer Economy" under which a color-coded "tier" system would be used.  Under this system, each county is placed in one of four tiers, Purple, Red, Orange, and Yellow, ranging from most to least restrictive.  Unlike the previous staged reopening plan under the May 7, 2020 Order, the current "tier" system under the August 28, 2020 Order does not provide any criteria under which California's businesses and economy would be permitted to fully reopen.  Under the August 28, 2020 Order, under the respective tiers, restaurants are required to 1.) cease all indoor dining (Purple tier); 2.) limit indoor dining capacity to 25% (Red tier); or 3.) limit indoor dining capacity to 50 % (Orange and Yellow tiers).

54.     For counties with populations of 106,000 or greater, the September 30, 2020 equity component incorporated into the Augusts 28, 2020 Order imposes as a condition of moving to a less restrictive tier a requirement that the test positivity rates in the most disadvantaged neighborhoods do not significantly lag behind the overall county test positivity

rate.[2] It further requires all counties as condition to moving to a lower tier, to submit a plan that (1) defines its disproportionately impacted populations, (2) specifies the percent of its COVID-19 cases in these populations, and (3) shows that it plans to invest Epidemiology and Laboratory Capacity for Prevention and Control of Emerging Infectious Diseases grant funds at least at that percentage to interrupt disease transmission in these populations.[3]

55.     Defendant Newsom has indicated his intent to implement these tiered restrictions for an indefinite period of time, publicly stating that "This Blueprint is statewide, stringent and slow….We have made notable progress over recent weeks, but the disease is still too widespread across the state. COVID-19 will be with us for a long time and we all need to adapt. We need to live differently. And we need to minimize exposure for our health, for our families and for our communities."  The current statewide Orders therefore include no provision for fully reopening the economy and by their terms continue for an indefinite period into the future.

### NEVADA COUNTY'S ENFORCEMENT
### OF STATE AND COUNTY PUBLIC HEALTH ORDERS

56.     The County Defendants, acting under color of state law, have enforced and continue to enforce the arbitrary restrictions imposed by the State Defendants. The County Defendants have also implemented and enforced arbitrary restrictions on plaintiffs' businesses under their own authority under state law. Cal. Constitution. Art. XI, § 7.

57.     On March 4, 2020, the Director for Emergency Services for Nevada County entered an Emergency Proclamation of a public health and safety emergency by reason of COVID-19. The Proclamation invoked the authority of Section 8360 of the California Government Code, Section A-1112.6 of the County of Nevada Administrative Code, and Governor Newsom's March 4, 2020 Emergency Order.

58.     On March 5, 2020, Ken Cutler, who was then serving as the Public Health Officer for Nevada County, issued a Declaration of Local Health Emergency pursuant to

---

[2] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/CaliforniaHealthEquityMetric.aspx (November 10, 2020).
[3] *Id.*

1    Section 101080 of the California Health and Safety Code.

2          59.    On March 10, 2020, the Board of Supervisors of Nevada County enacted

3    Resolution 20-062 proclaiming a local emergency by reason of COVID-19. The Proclamation

4    invoked the authority of Sections 8630 and 54956.5 of the California Government Code.

5          60.    On March 24, 2020, Ken Cutler, who was then serving as the Public Health

6    Officer for Nevada County, acting under color of state law, issued an Order entitled

7    "Clarification of Governor's and State Officer's 'Stay-at-Home' Order as related to Lodging

8    Facilities. The Order was amended on May 21, 2020.

9          61.    On April 15, 2020, Ken Cutler, who was then serving as the Public Health

10   Officer for Nevada County, issued a Stay-at-Home Order pursuant to California Health and

11   Safety Code sections 101030, 120100, et seq., and Section 2501 of Title 17 of the California

12   Code of Regulations. The Order invoked and incorporated by reference, among others,

13   Governor Newsom's March 4, 2020 Emergency Order and March 19, 2020 Executive Order

14   N-33-20, and the Supervisor Defendants' March 10, 2020 Resolution 20-062. Dr. Cutler

15   issued an Amended Order on April 27, 2020.

16         62.    On October 1, 2020, the Nevada County Department of Public Health issued an

17   Order restricting the conditions under which live music can be presented at bars, restaurants

18   and wineries.

19         63.    The restrictions in place by virtue of the Orders, Proclamations and Resolutions

20   of the County Defendants and their employees and agents, as alleged above, imposed

21   restrictions on plaintiffs that were and continue to be at least as restrictive as those imposed by

22   the Orders and restrictions implemented by the State Defendants.

23         64.    The Orders, Proclamations and Resolutions implemented by the County

24   Defendants and their agents and employees as alleged above were issued on the authority of

25   the Supervisor Defendants and were the official policy of Nevada County.

26         65.    Plaintiffs have repeatedly asked the County Defendants what they can do to

27   resume their indoor operations safely, only to be rebuffed. Plaintiffs have researched and

28   discovered multiple effective means of preventing infection and transmission of COVID-19

within restaurant businesses. Plaintiffs have requested meetings with the County Defendants to propose ways in which such means could be utilized to allow restaurants to open safely, but such requests for meetings have been denied.

66.     Plaintiffs and other restaurant owners are well-versed in appropriate practices to prevent the spread of contagion and illnesses within a restaurant setting. Implementing appropriate sanitary and hygiene practices and to ensure customer safety is an everyday practice in the restaurant business.

67.     Restaurants in Nevada County are also subject to regular mandatory health and safety inspections by both state and local health officials.

**NEVADA COUNTY IRRATIONALLY**

**DISCRIMINATED AGAINST PLAINTIFFS IN THE ENFORCEMENT**

**OF HEALTH MEASURES AND USED STATE ACTION TO RETALIATE**

**AGAINST AND SILENCE PLAINTIFFS' PROTECTED EXPRESSIVE ACTIVITY**

68.     Rather than working with plaintiffs to allow them to resume their full scope of business activities and exercise their fundamental right to pursue a lawful vocation, the County Defendants intentionally treated plaintiffs differently than other, similarly situated, restaurant businesses without any rational basis. The County Defendants have also retaliated against plaintiffs for exercising their First Amendment rights to free speech and association and to seek a redress of grievances. The Nevada County defendants have thereby attempted to silence plaintiff's legitimate expressive activities.

69.     On July 21, 2020, the County Defendants, acting pursuant to the Orders and restrictions imposed by the State Defendants and the Nevada County Defendants, as alleged above, served Friar Tuck's and Old Town Café with orders requiring immediate closure and threatening the imposition of fines, citing an "imminent and substantial health hazard." However, no specific finding was provided substantiating the existence of an imminent and substantial health hazard. The closure orders were arbitrary and capricious and violated these plaintiffs' due process rights under the Fourteenth Amendment.

70.     The County Defendants' closure orders also intentionally subjected Friar

Tuck's and Old Town Café to differential enforcement of public health measures without any rational basis. Friar Tuck's and Old Town Café were closed for allegedly failing to follow the July 13, 2020 Public Health Officer Order requiring restaurants to cease providing indoor dining service. However, no such closure order was imposed on, Mezé, a restaurant located in Grass Valley immediately adjacent to Old Town Café, which was operating no differently than these plaintiffs. The County Defendants also failed to impose closure orders on Grass Valley Brewing Company and Thirsty Barrel Taphouse and Grill. Both are restaurants in Grass Valley that were operating what would be considered indoor dining areas under the Orders and restrictions in place at the time Friar Tuck's and Old Town Café were closed by the County Defendants.

71.     When the County Defendants issued the notices of immediate closure, Old Town Café, in the exercise its constitutional rights to free speech and association to and seek a redress of grievances, asked patrons, family, and friends to write to the County Defendants to express opposition to the shutdown of local restaurants.

72.     Following the imposition of closure orders and the levying of fines on Friar Tuck's and Old Town Café, these plaintiffs organized the Coalition.

73.     In response, the County Defendants coerced plaintiffs to forego their First Amendment rights.

74.     During discussions and communications with defendant Irani and defendant Elliott, defendant Elliot stated that as a condition to reinstituting the operating permits of, and reducing the fines imposed on, Friar Tuck's, Old Town Café, and Coalition members, plaintiffs were "to behave" and stop asking people to write letters to county and local officials.

75.     The County Defendants and their agents have directly threatened retaliation against Friar Tuck's, Old Town Café and Coalition members for the exercise of their constitutional rights by refusing to negotiate reductions in fines. Defendant Elliott stated that plaintiffs' establishment of the Coalition would be considered as grounds to refuse to negotiate a lowering of the fines imposed upon Friar Tuck's, Old Town Café and members of the Coalition.

76.     The foregoing retaliation against plaintiffs and efforts to coerce plaintiffs to forego the exercise of their First Amendment rights were undertaken on behalf of the Supervisor Defendants and were the official policy of Nevada County.

**PLAINTIFFS WILL CONTINUE TO SUFFER SIGNIFICANT HARM FROM IMPLEMENTATION AND ENFORCEMENT OF COVID-19-RELATED ORDERS**

77.     After the implementation of the August 28, 2020 Order of the State Public Health Officer, Friar Tuck's and Old Town Café and members of the Coalition were able to serve sit down patrons at only 25% of indoor capacity and at outdoor tables, and since September 22, 2020, have been able to serve sit down patrons at only 50% of indoor capacity and at outdoor tables.

78.     Friar Tuck's and Old Town Café border busy main streets in Nevada City and Grass Valley, respectively.  Requiring these plaintiffs and Coalition members to serve customers outdoors has exposed their customers and employees to various hazards, including motor vehicle traffic, exhaust fumes, noise, ambient heat, and rain. These hazards have diminished the volume of business of these plaintiffs.

79.     Nevada County is now entering the Fall Season in which it experiences regular rain and snowstorms as well as low temperatures during both day and night. These seasonal weather conditions will soon prevent Friar Tuck's, Old Town Café and Coalition members from continuing to be able to serve their sit-down customers outdoors. Should Friar Tuck's and Old Town Café be unable to resume indoor service at full capacity, Friar Tuck's and Old Town Café will soon cease to be viable economic business enterprises, with resulting damage to Friar Tuck's, Old Town Café and the plaintiff owners of such enterprises. Members of the Coalition are also threatened with insolvency should they be unable to resume indoor service at full capacity before seasonal weather prevents them from serving sit-down customers outdoors.

80.     Furthermore, even if indoor dining is permitted, under the August 28, 2020, Order issued by the State Public Health Officer, restaurants will at most be permitted to resume indoor service at only 50% of their previous indoor seating capacities. This restriction

1  further threatens Friar Tuck's, Old Town Café and Coalition members with insolvency.

2       81.     Since September 2020, Northern California has experienced widespread and

3  severe wildfires. These fires have resulted in a significant amount of smoke and other ambient

4  particulate matter in the Nevada County area, leading to air quality indices considered

5  hazardous to human health. As a result of the County Defendants' enforcement of the

6  requirement that Friar Tuck's, Old Town Café and Coalition members limit indoor seating

7  capacity and serve other sit-down customers only in outdoor areas, customers have been

8  subjected to the health hazards arising from wildfires.  The hazards to which plaintiffs'

9  customers have been subjected have diminished patronage and the revenues of Friar Tuck's,

10  Old Town Café and Coalition members

11       82.     Nevada County continues to experience the wildfire season as of the filing of

12  the Complaint in this matter. As a result, Nevada County will almost certainly continue to

13  experience air quality hazardous to human health. In the event of other future, major fires,

14  many if not most local evacuees and visiting first responders would be exposed to the hazards

15  created by the wildfires should they dine at Friar Tuck's, Old Town Café or Coalition

16  members' businesses while the Orders and restrictions at issue in this matter remain in place

17  and are enforced by the County Defendants. These reasonably anticipated circumstances,

18  should they occur, would also reduce the patronage and revenues generated by Friar Tuck's,

19  Old Town Café and Coalition members.

20       83.     Despite the ongoing and anticipated future hazards arising from wildfires, the

21  County Defendants have refused requests to grant temporary waivers to Friar Tuck's, Old

22  Town Café and Coalition members permitting them to serve patrons indoors at full capacity.

23                         **NEVADA COUNTY HAS EXPERIENCED**

24                     **RELATIVELY LITTLE IMPACT FROM COVID-19**

25       84.     During the seven-month period since the Governor proclaimed a State of

26  Emergency, Nevada County has experienced relatively little impact from COVID-19.

27       85.     As of November 10, 2020, Nevada County, with a population of approximately

28  100,000, has on information and belief, experienced a total of 768 cases of COVID-19. On

information and belief, of this number, 632 cases have recovered. In addition, on information and belief, of the 85 current cases of COVID-19 as of October 19, 2020, only 3 cases require hospitalization.

86.     Of the total number of COVID-19 cases in Nevada County, there have been 9 deaths attributed to the virus since the State of Emergency was proclaimed. On information and belief, each of these 9 deaths involved patients of advanced age with multiple comorbidities or concurrent terminal diseases, including in at least one case, stage 4 cancer.

87.     During the period May 7 through July 13, 2020, plaintiffs Friar Tuck's and Old Town Café, Coalition members and other restaurants in Nevada County were fully reopened for indoor dining. On information and belief, there is no evidence that this resulted in an increase in COVID-19 cases in Nevada County or elsewhere.

88.     As of the date of the filing of the Complaint in this matter, defendants have provided no evidence linking the operation of sit-down dining with the transmission of COVID-19 in Nevada County.

89.     On information and belief, as of the filing of the Complaint, there is no evidence that a case of COVID-19 can be traced to restaurant businesses in Nevada County.

## **FIRST CAUSE OF ACTION**

### **(42 U.S.C. § 1983-Fourteenth Amendment Substantive Due Process)**

90.     Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

91.     The Due Process Clause of the Fourteenth Amendment includes a substantive component that bars arbitrary wrongful, state action regardless of the fairness of the procedures employed. *Zinermon v. Bosch*, 494 U.S. 113, 125 (1990).

92.     The right of citizens to support themselves by engaging in a chosen lawful occupation or business is deeply rooted in our nation's legal and cultural history and has long been recognized as a component of the liberty and property interests protected by the Fourteenth Amendment. *Truax v. Raich*, 239 U.S. 33, 41 (1915); *Piecknick v. Comm of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994) (citing *Green v. McElroy*, 360 U.S 474, 492 (1959); *Truax*,

1   239 U.S. at 41); *Medina v. Rudman*, 545 F.2d 244, 250 (1ˢᵗ Cir. 1976). *See also Meyer v.*

2   *Nebraska*, 262 U.S. 390, 399 (1923).

3       93.     The Fourteenth Amendment also prohibits government action that arbitrarily

4   infringes the fundamental liberty interest of citizens to travel, be out and about in public,

5   associate, and simply be left alone while otherwise acting in a lawful manner. *City of Chicago*

6   *v. Morales*, 527 U.S. 41, 53-54 (1999); *Aptheker v. Secretary of State*, 378 U.S. 500, 520

7   (1964); *Kent v. Dulles*, 357 U.S. 116, 126 (1958) (right to travel includes interstate and

8   intrastate travel) ; *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990); *See also*

9   *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972).

10      94.     The substantive due process component of the Fourteenth Amendment forbids

11  the government from infringing upon fundamental liberty interests regardless of the process

12  provided unless the infringement survives review under strict scrutiny. *See, e.g. Memorial*

13  *Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S.

14  330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969), *Maher v. Roe*, 432 U.S.

15  464, 488 (1977).

16      95.     The Orders and restrictions at issue in this matter cannot be sustained even

17  under the less-exacting standard that the state action in question must be narrowly tailored to

18  serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-302 (1993).

19      96.     The imposition of lockdowns requiring vast segments of the population to

20  remain at home regardless of their status as a carriers of disease is on its face arbitrary and not

21  narrowly tailored to serve a compelling public interest. Remarkably, despite multiple changes

22  in the Orders, the State Public Health Officer's stay-at-home order of March 19, 2020 remains

23  in effect as of the filing of this Complaint. Such broad-ranging and sweeping measures have

24  never been previously employed to prevent the spread of disease. Mitigation efforts in

25  response to the Spanish Flu pandemic—the most deadly pandemic in American history—did

26  not come close to imposing restrictions comparable to the lockdown order and business

27  closures and restrictions imposed and enforced by defendants.  Although this nation has been

28  faced with many epidemics and pandemics, governments have never responded with

1   lockdowns of entire populations and shutdowns of significant sectors of the economy for

2   extended and indefinite periods.

3      97. Neither general lockdown measures, wide-ranging business closures nor

4   prohibitions on public gatherings can be justified as quarantines. Quarantine orders may be

5   permitted as to infected individuals, but not the public at large. *Robinson v. State of California*,

6   370 U.S. 660, 666 (1962). "Before exercising their full powers to quarantine, state official

7   must show that 'reasonable ground exists to support the belief" that the person so held is

8   infected. *In re Martin*, 83 Cal.App.2d 164, 167 (1948) (citation and internal quotes omitted).

9   Public health officials must be able to show "probable cause to believe the person so held has

10   an infectious disease …" *Id*. California courts have found that "a mere suspicion [of a

11   contagious disease], unsupported by facts giving rise to reasonable or probable cause, will

12   afford no justification at all for depriving persons of their liberty and subjecting them to virtual

13   imprisonment under a purported order of quarantine." *Ex parte Arata*, 52 Cal. App. 380, 383

14   (1921). The lockdown and business closure and public gathering provisions of the Orders at

15   issue apply broadly to persons, businesses, and lawful gatherings without any specific showing

16   of infection or of the probability of transmission.

17      98. Evidence and analysis available since at least May 2020 further establish that

18   the state actions at issue in this matter—widespread population lockdowns, widespread

19   business closures and restrictions, and pervasive restrictions on the right of the people to

20   travel, associate, and assemble to pursue lawful spiritual, political, economic, and social

21   ends—cannot be justified as rationally necessary to protect public health.

22      99. At a press conference on March 19, 2020, defendant Newsom repeatedly said

23   the rationale for the March 19, 2020, Order was to "bend the curve" to slow down

24   transmission of COVID-19 enough to reduce the strain of an expected, large influx of COVID-

25   19 cases was anticipated to produce.[4]  Newsom predicted a 20 percent hospitalization rate and

26   56 percent infection rate in California.  Had these predictions proven accurate, California

27   _____

28   [4] The March 19, 2020 press briefing is available at:
   https://www.youtube.com/watch?v=8OeyeK8-S5o (November 10, 2020). (*See also* 3/19/20
   EO-N-33-20 and Order of the State Public Health Officer.)

1  would have experienced 25.5 million infections, over 5 million total hospitalizations, nearly

2  100,000 simultaneous hospitalizations, and a shortfall of 9,336 hospital beds.[5]

3       100.   While the March 19, 2020 Order was arguably reasonable as a short term

4  measure taken with limited information, epidemiological evidence has long since

5  demonstrated that there is no rational basis for believing that the sweeping restrictions still in

6  place are necessary to achieve the goal of bending the curve or combating COVID-19.

7       101.   As of May 5, 2020, within seven weeks after Newsom's announcement,

8  the California Department of Public Health reported the total number of confirmed cases

9  requiring hospitalization—including ICU treatment—was 4,474.[6] As of May 5, 2020,

10  according to the California Department of Public Health, the total number of suspected

11  COVID-19 cases requiring hospitalization, including ICU treatment, was 1,622.[7] Adding these

12  together yields a total of 6,096 patients requiring hospitalization statewide.

13       102.   Current hospitalizations, and ICU usage attributable to COVID-19 demonstrate

14  that the need to bend the curve has not re-emerged. According to data provided by the

15  California Department of Public Health, as of November 10, 2020, there were 3,001

16  hospitalizations and 859 patient in ICU units with confirmed cases of COVID-19 and 667

17  hospitalizations and 102 patient in ICU units with suspected cases of COVID-19.[8] Adding

18  these figures yields a total of 4,609 patients requiring hospitalization statewide.

19       103.   Without minimizing the impact of these cases on the infected individuals, their

20  families and the community, these numbers are not even in the general vicinity of the

21  predictions that Governor Newsom relied upon in issuing the March 19, 2020, Order.

22       104.   The factual predicates for the March 19, 2020, Order have proven inaccurate by

23  orders of magnitude. California did not use the hospital ship provided by the United States

24

25     [5] *Id.*

26     [6] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx
(May 7, 2020).

27     [7] *Id.*

28     [8] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx
(November 10, 2020).

Navy in response to Governor Newsom's March 4, 2020 letter to President Trump. There has been no shortfall of hospital beds, ICU units, or ventilators. No COVID-19 patient in California has been denied needed medical attention because the health care system was overtaxed.

105.    As early as April 16, 2020, Governor Newsom himself stated that the goal of bending and arguably flattening the curve had been achieved.[9]

106.    The grossly exaggerated predictions relied on by Governor Newsom in issuing the Orders and restrictions at issue appear to have been based on extremely high effective rates of transmission reported in Wuhan, China, when the virus first emerged.

107.    In addition, a number of studies of antibody tests conducted as early as April 2020 have concluded that the virus has spread through the population far more widely than is indicated by positive test results. While none of these studies is conclusive, they have been consistent in concluding that the virus has spread through the population at rates from ten to fifty times greater than the incidence of infection derived from positive test results. Higher overall rates of transmission means that negative outcomes from COVID-19 -hospitalizations, ICU use and deaths- are far less frequent as a percentage of total infections than indicated by calculating the rate of these outcomes as a percentage of positive test results.

108.    Effective lowering of the transmission and lethality of the virus can be achieved by less restrictive means that are narrowly tailored to the risks presented by COVID-19. Eight in ten deaths from COVID-19 occurred to those age 65 or older, and of those deaths, more than 50% were 85 or older.[10] Those suffering from preexisting conditions such as diabetes, hypertension, and heart disease also face grossly disproportionate risks from COVID-19. Measures to protect vulnerable populations combined with appropriate hygiene measures are sufficient to combat the spread and negative outcomes of COVID-19. This is demonstrated by

---

[9] https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16 (November 10, 2020).

[10] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (November 10, 2020).

the COVID-19 outcomes achieved in Taiwan and Sweden without implementing sweeping lockdown measures and business closures and restrictions.

109. The wide-ranging restrictions at issue, imposed for extended and indefinite periods, are not only not narrowly tailored to serve the purpose of promoting public health, they are also deleterious to public health.

110. The irrationality and negative health outcomes associated with the restrictions at issue are demonstrated by the Great Barrington Declaration, a statement authored by three respected epidemiologists: Dr. Martin Kulldorf, professor of Medicine at Harvard, Dr. Sunetra Gupta, professor at Oxford University and Dr. Jay Bhattacharya, professor at Stanford. The Great Barrington Declaration has since been endorsed by 11,482 medical and public health scientists and 34,116 medical practitioners.[11] The Great Barrington Declaration merits quotation in full.

> As infectious disease epidemiologist and public health scientists we have grave concerns about the damaging physical and mental health impact of prevailing COVID-19 policies, and recommend an approach we call Focused Protection.
>
> Coming from both right and left, and around the world, we have devoted our careers to protecting people. Current lockdown policies are producing devastating effects on short and long-term public health. The results (to name a few) include lower childhood vaccination rates, worsening cardiovascular disease outcomes, fewer cancer screenings and deteriorating mental health-leading to greater excess mortality in years to come, with the working class and younger members of society carrying the heaviest burden. Keeping students out of school is a grave injustice.
>
> Keeping these measures in place until a vaccine is available will cause irreparable damage, with the underprivileged disproportionately harmed.
>
> Fortunately, our understanding of the virus is growing. We know that vulnerability to death from COVID-19 is more than a thousand-fold higher in the old and infirm than in the young. Indeed, for children, the threat of COVID-19 is less dangerous than many other harms, including influenza.
>
> As immunity builds in the population, the risk of infection to all -including the vulnerable- falls. We know that all populations will eventually reach herd immunity – i.e. the point at which the rate of new infections is stable – and that this can be assisted by (but is not dependent upon) a vaccine. Our goal should therefore be to minimize mortality and social harm until we reach herd immunity.

---

[11] https://gbdeclaration.org/view-signatures (November 10, 2020).

The most compassionate approach that balances the risks and benefits of reaching herd immunity, is to allow those who are at minimal risk of death to lead their lives normally to build up immunity to the virus through natural infection, while better protecting those who are at highest risk. We call this Focused Protection.

Adopting measures to protect the vulnerable should be the central aim of health responses to COVID-19. By way of example, nursing homes should use staff with acquired immunity and perform PCR testing of other staff and all visitors. Staff rotation should be minimized. Retired people living at home should have groceries and other essentials delivered to their home. When possible, they should meet family members outside rather than inside. A comprehensive list of measures, including approaches to multigenerational households, can be implemented, and is well within the scope and capability of public health professionals.

Those who are not vulnerable should immediately be allowed to resume life as normal. Simple hygiene measures, such has hand-washing and staying home when sick should be practiced by everyone to reduce the herd immunity threshold. Schools and universities should be open for in-person teaching. Extracurricular activities, such as sports, should be resumed. Young, low-risk adults should work normally, rather than from home. Restaurants and businesses should be open. Arts, music, sport and other cultural activities should resume. People who are more at risk may participate if they wish, while society as a whole enjoys the protections conferred on the vulnerable by those who have built up herd immunity.[12]

111.    A policy that promotes one positive outcome -the reduction of the negative effects of COVID-19- without considering the countervailing negative effects of the policy itself is the very definition of arbitrary, particularly when alternative measures are available that would effectively promote all desired outcomes. There is no reason to believe that the negative health outcomes associated with the coercive state actions at issue were considered by defendants in formulating the Orders, restrictions and enforcement measures at issue in this matter.

112.    The September 30, 2020 equity metric incorporated in the August 28, 2020 Order is arbitrary insofar as it requires all counties to submit a plan as a condition to moving to a lower tie, i.e., a lower level of restrictions. The required plan has no bearing on whether the conditions justifying the exercise of emergency power -the spread of COVID-19 and the incidence of the resulting negative health effects- prevail at levels justifying a particular level of restrictions.

---

[12] https://gbdeclaration.org/ (November 20, 2020).

113.    The indefinite duration of the measures at issue is a further indication that the measures are arbitrary. Governor Newsom indicated in public remarks in April 2020 that living under emergency orders is the new normal for the next 12-18 months.[13] Little has changed in the intervening months to change the picture. The stay-at-home Order imposed on March 19, 2020, remains in effect. The August 28, 2020, Order, as modified by the September 30, 2020 equity component, is in effect indefinitely. Under this Order, the best plaintiffs can hope for is reopening their restaurants at 50% capacity.

114.    The ever-changing requirements imposed on plaintiffs and other businesses and organizations are a further indication of the arbitrary nature of the measures at issue. Plaintiffs have been prohibited from offering indoor service, had the restriction lifted subject to conditions, only to have indoor dining banned again. Condition upon condition is imposed, with the County Defendants micromanaging the presentation of music at plaintiffs' restaurants, including a requirement that all singers must be no closer than ten feet to other musicians or patrons. Perpetually changing and ever-expanding restrictions imposed by executive fiat are hallmarks of arbitrary rule. Even recourse to political means to modify the measures at issue has been compromised by the Governor's exercise of emergency powers. Governor Newsom invoked emergency powers to unilaterally change the state's voting rules for the November 2020 general election to require that all registered voters be sent vote-by-mail ballots.[14]

115.    The designation of essential and non-essential businesses, i.e., those allowed to operate, under the Orders and restrictions at issue is also characterized by arbitrary distinctions. While some businesses that have been allowed to operate are clearly critical to human needs during an emergency, other preferred businesses have been allowed to operate notwithstanding the fact that they pose risks equal to or greater than other businesses deemed non-essential. In response to lobbying, the State Defendants amended the list of "essential" businesses to include cannabis retailers. Under current guidelines, film, television and music

---

[13] https://www.youtube.com/watch?v=wQW0QGthFV4 (November 10, 2020).
[14] Executive Order N-64-20, May 8, 2020

1    production has been allowed to resume,[15] despite the fact that these activities involve indoor

2    activity comparable to restaurants and other hospitality and entertainment venues. At the same

3    time, plaintiffs have been subjected to regulations imposed by the County Defendants that all

4    but preclude the presentation of live music.

5          116.    The designation of essential and non-essential businesses also arbitrarily places

6    the burden of stopping the spread of COVID-19 on a limited class of persons and businesses.

7    By way of example, entertainment venues, tourist destinations, restaurants and wineries have

8    been and continue to be either shutdown or severely circumscribed in their operations.

9    Businesses providing personal services—such as barbers, cosmetologists, nail salons and even

10    doctors and other medical professionals not providing treatment for COVID-19—have been

11    similarly restricted in their operations and completely shut down at times. Meanwhile certain

12    segments of the economy—such as large discount and hardware retailers—have remained in

13    operation continuously and have even experienced increases in revenues and profits.

14    Furthermore, defendants' restrictions on indoor dining took effect at a time when many

15    residents of Nevada County were evacuated due to surrounding fires, or when numerous

16    members of state and local firefighting units were deployed to the area. These residents and

17    local and visiting firefighters had limited access to personal kitchens or cooking equipment. In

18    these circumstances, the provision of dining in local restaurants was an essential service.

19    Defendants nevertheless continued to impose substantial restrictions on plaintiffs' ability to

20    serve the needs of these individuals.

21          117.    Under the legal authority under which they purport to act, defendants are able to

22    reinstate any previously imposed Orders and restrictions if preliminary and permanent

23    injunctive relief is not granted.

24          118.    Plaintiffs have been damaged by the unconstitutional Orders and restrictions

25    imposed and enforced by defendants.

26    ///

27    ///

28

---

[15] https://covid19.ca.gov/industry-guidance/#music-tv-film (November 10, 2020).

119.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected liberty and property interests unless the court enjoins enforcement of the unconstitutional Orders and restrictions imposed by defendants.

120.    Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating or restraining enforcement of the unconstitutional Orders and restrictions imposed by defendants.

## SECOND CAUSE OF ACTION

**(42 U.S.C. § 1983-Fourteenth Amendment Procedural Due Process)**

121.    Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

122.    Procedural protections must be afforded when the government acts to deprive individuals of protected liberty or property interests. *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). Procedural due process does not forbid the government from depriving individuals of a protected interest, but rather requires the government to employ adequate procedures that ensure the fairness of any deprivation. *See McNabb v. United States*, 318 U.S. 332, 347 (1943). The "involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." O'*Connor v. Donaldson*, 422 U.S. 563, 580 (1975).

123.    Defendants have deprived plaintiffs of their protected liberty and property interests without providing notice and an opportunity to be heard. Defendants have imposed Orders and restrictions with the force of law through the exercise of executive power without providing an opportunity for plaintiffs and other members of the public to contest or challenge the resulting limitations on their fundamental rights. The Orders and restrictions have been in place in one form or another for over seven months and remain in effect for an indefinite period into the future.

124.    Under the legal authority under which they purport to act, defendants are able to reinstate any previously imposed Orders and restrictions if preliminary and permanent injunctive relief is not granted.

125.     Plaintiffs have been damaged by the unconstitutional Orders and restrictions imposed and enforced by defendants.

126.     Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected liberty and property interests unless the court enjoins enforcement of the unconstitutional Orders and restrictions imposed by defendants.

127.     Plaintiffs are entitled to declaratory relief and temporary, preliminary and permanent injunctive relief invalidating or restraining enforcement of the unconstitutional Orders and restrictions imposed by defendants.

**THIRD CAUSE OF ACTION**

**(42 U.S.C. § 1983-Fourteenth Amendment Equal Protection)**

128.     Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

129.     The Fourteenth Amendment to the United States Constitution requires states to govern impartially. Classifications that subject similarly situated persons or classes of persons to differing treatment violate the equal protection guarantee of the Fourteenth Amendment.

130.     Strict scrutiny applies to classifications that impinge on fundamental rights. *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

131.     The Orders and restrictions imposed by defendants impinge on the fundamental rights of plaintiffs and the people of the State of California to freedom from confinement and to travel, associate, engage in business and trade, seek gainful employment and generally be left alone to engage in otherwise lawful pursuits.

132.     The Orders and restrictions imposed by defendants are based on arbitrary classifications and criteria that are not rationally related to promoting public health, that promote the interests of favored groups without reference to the impact of the activities in question on the transmission of COVID-19 and that shift the burden of the response to COVID-19 to a limited class of persons and businesses.

133.     The right to equal protection guaranteed by the Fourteenth Amendment is also violated by enforcement measures that intentionally, and without rational basis, treat persons

or groups differently from others similarly situated. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). The County Defendants have violated plaintiffs' right to equal protection by intentionally enforcing health regulations and the Orders and restrictions at issue differently against Friar Tuck's and Old Town Café from similarly situated restaurants.

134.     Under the legal authority under which they purport to act, defendants are able to reinstate any previously imposed Orders and restrictions if preliminary and permanent injunctive relief is not granted.

135.     Plaintiffs have been damaged by the Orders and restrictions imposed and enforced by defendants.

136.     Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected liberty and property interests unless the court enjoins enforcement of the unconstitutional Orders and restrictions imposed by defendants.

137.     Plaintiffs are entitled to declaratory relief and temporary, preliminary and permanent injunctive relief invalidating or restraining enforcement of the unconstitutional Orders and restrictions imposed by defendants.

## FOURTH CAUSE OF ACTION

### (42 U.S.C. § 1983-Fifth Amendment)

138.     Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

139.     The Takings Clause of the Fifth Amendment of the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.

140.      "The Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

141.     Defendants' imposition and enforcement of Orders restricting the operation of plaintiffs' businesses for an indefinite period and having no stated end date has caused both a

regulatory and physical taking of plaintiffs' property without just compensation. At a minimum, defendants' Orders and restrictions have effected a partial taking. *See Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978). Defendants' unprecedented and highly disruptive Orders and restrictions have significantly reduced plaintiffs' revenues, profits and income, resulting in significant uncompensated harm to plaintiffs' distinct, investment-backed expectations in their businesses.  If defendants' unconstitutional Orders and restrictions are not preliminarily and permanently enjoined, plaintiffs are threatened with the imminent total loss of their protected property interests in their investments, revenues, profits, income and the value of their businesses.

142.    Under the legal authority under which they purport to act, defendants are able to reinstate any previously imposed Orders and restrictions if preliminary and permanent injunctive relief is not granted.

143.    Plaintiffs have been damaged by the unconstitutional Orders and restrictions imposed and enforced by defendants.

144.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected property interests unless the court enjoins enforcement of the unconstitutional Orders and restrictions imposed by defendants.

145.    Plaintiffs are entitled to declaratory relief and temporary, preliminary and permanent injunctive relief invalidating or restraining enforcement of the unconstitutional Orders and restriction imposed by defendants.

### **FIFTH CAUSE OF ACTION**

### **(42 U.S.C. § 1983-Commerce Clause)**

146.    Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

147.    The Commerce Clause of the United States Constitution provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art. I, Section 8, Clause 3.

148.   The Commerce Clause prohibits states from exercising sovereign authority that excessively burdens interstate commerce. "[T]he incantation of a purpose to promote the public health or safety does not insulate a state law from Commerce Clause attack. Regulations designed for that salutary purpose nevertheless may further the purpose so marginally, and interfere with commerce so substantially, as to be invalid under the Commerce Clause." *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981).

149.   Friar Tuck's, Old Town Café and Coalition members engage in substantial interstate commerce and engage in activities that have a substantial effect on interstate commerce. These plaintiffs purchase goods and services in interstate commerce and serve travelers who visit California from other states and foreign countries.

150.   Residents and businesses in the State of California engage in billions, if not trillions, of dollars of interstate commerce through employment, the purchase and sale of goods and services, and by serving thousands, if not millions, of travelers who visit California annually from other states and foreign countries.

151.   The Orders and restrictions imposed and enforced by defendants excessively burden interstate commerce by precluding plaintiffs and the people of California from engaging in substantial and wide-ranging economic, business and employment activities.

152.   Under the legal authority under which they purport to act, defendants are able to reinstate any previously imposed Orders and restrictions if preliminary and permanent injunctive relief is not granted.

153.   Plaintiffs have been damaged by the unconstitutional Orders and restrictions imposed and enforced by defendants.

154.   Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected liberty and property interests unless the court enjoins enforcement of the unconstitutional Orders and restrictions imposed by defendants.

155.   Plaintiffs are entitled to declaratory relief and temporary, preliminary and permanent injunctive relief invalidating or restraining enforcement of the unconstitutional Orders and restrictions imposed by defendants.

# SIXTH CAUSE OF ACTION

## (42 U.S.C. § 1983-First Amendment)

156.    Plaintiffs incorporate by reference as if fully restated here the foregoing allegations.

157.    The First Amendment to the United States Constitution prohibits states from infringing the right of the people to free speech and peaceful assembly and to petition the government for a redress of grievances.

158.    The County Defendants have retaliated against plaintiffs for the exercise of their rights to free speech, lawful assembly and to petition the government for a redress of grievances by refusing to negotiate reductions in fines imposed on Friar Tuck's, Old Town Café and Coalition members unless plaintiffs cease these protected activities.

159.    The County Defendants used the threat of fines and continued closures imposed on Friar Tuck's, Old Town Café and Coalition members to coerce plaintiffs to forego the exercise of their Constitutional rights to free speech, lawful assembly and to petition the government for a redress of grievances.

160.    Plaintiffs have suffered damage to their protected liberty and property interests -including unwarranted fines, continued restrictions upon and closures of their businesses- by reason of the County Defendants' retaliation and coercion in violation of plaintiffs' First Amendment rights.

161.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm to their protected liberty and property interests unless the court enjoins the County Defendants' violations of their First Amendment rights.

162.    Plaintiffs are entitled to declaratory relief and temporary, preliminary and permanent injunctive relief invalidating or restraining the County Defendants' violations of their First Amendment rights.

///

///

///

**PRAYER**

Plaintiff prays for an Order awarding the following relief against the State Defendants:

A.      Preliminary and permanent injunctive relief precluding the enforcement of the following Orders:

       1.      Governor Newsom's March 4, 2020 Emergency Order;

       2.      Governor Newsom's March 19, 2020 Emergency Order;

       3.      Governor Newsom's May 4, 2020 Emergency Order;

       4.      The State Public Health Officer's March 19, 2020 Order;

       5.      The State Public Health Officer's August 28, 2020 Order;

B.      A judicial declaration that the following Orders violate plaintiffs' rights under the Fourteenth and Fifth Amendments to the United State Constitution:

       1.      Governor Newsom's March 4, 2020 Emergency Order;

       2.      Governor Newsom's March 19, 2020 Emergency Order;

       3.      Governor Newsom's May 4, 2020 Emergency Order;

       4.      The State Public Health Officer's March 19, 2020 Order;

       5.      The State Public Health Officer's August 28, 2020 Order;

C.      Attorney's fee and costs;

D.      All such other relief the court deems just and proper.

Plaintiff prays for an Order awarding the following relief against the County Defendants:

A.      Preliminary and permanent injunctive relief precluding the enforcement of the following Orders:

       1.      Governor Newsom's March 4, 2020 Emergency Order;

       2.      Governor Newsom's March 19, 2020 Emergency Order;

       3.      Governor Newsom's May 4, 2020 Emergency Order;

       4.      The State Public Heath Officer's March 19, 2020 Order;

       5.      The State Public Heath Officer's August 28, 2020 Order;

       6.      The Supervisor Defendants' Resolution 20-062;

1     7.     The Nevada County Public Health Officer's April 27, 2020 Order;

2     8.     The Nevada County Public Health Officer's October 1, 2020 Order;

3     B.     Preliminary and permanent injunctive relief prohibiting retaliation based upon,

4 and coercion to preclude, plaintiffs' exercise of their First Amendment rights to freedom of

5 speech and assembly and to petition the government for a redress of grievances;

6     C.     A judicial declaration that the following Orders violate plaintiffs' rights under

7 the Fourteenth and Fifth Amendments to the United State Constitution:

8     1.     Governor Newsom's March 4, 2020 Emergency Order;

9     2.     Governor Newsom's March 19, 2020 Emergency Order;

10     3.     Governor Newsom's May 4, 2020 Emergency Order;

11     4.     The State Public Health Officer's March 19, 2020 Order;

12     5.     The State Public Health Officer's August 28, 2020 Order;

13     6.     The Supervisor Defendants' Resolution 20-062;

14     7.     The Nevada County Public Health Officer's April 27, 2020 Order;

15     8.     The Nevada County Public Health Officer's October 1, 2020 Order;

16     D.     Compensatory damages in the amount $500,000 or such other amount proven at

17 trial;

18     E.     Attorney's fee and costs;

19     F.     All such other relief the court deems just and proper.

20     Plaintiff prays for an Order awarding the following relief against defendants Amy Irani

21 and Katharine Elliot:

22     A.     Compensatory damages in the amount $500,000 or such other amount proven at

23 trial;

24     B.     Punitive damages in the amount $1,500,000;

25     C.     Attorney's fee and costs;

26     D.     All such other relief the court deems just and proper.

27                         **JURY DEMAND**

28     Plaintiffs demand trial by jury.

Date: November 10, 2020                    BAILEY AND ROMERO


Steven C. Bailey
*Attorneys for Plaintiffs Tuck's Restaurant and Bar,*
*Kenneth R. Paige, Chad Page, Buckman Enterprises,*
*LLC, Robin Buckman, and The Nevada County*
*Restaurant Coalition*